Good morning, your honors. May it please the court, Ashwini Mathai representing Charles Malone. The essence of Mr. Malone's appeal revolves around a factual dispute with the PSR's categorization of him as a gang member based on controverted evidence. The failure of the district court to resolve this dispute is a clear violation of Rule 32. Contrary to the government's contention, Mr. Malone adequately objected to specific facts contained within the PSR triggering the requirements of Rule 32. For example, he objected to the characterization of himself as a gang member, he objected to the competency of the police reports the probation officer relied upon to reach that conclusion, and he requested an evidentiary hearing to resolve this matter. These are not the generic objections to recommendations or conclusions that the government would have you believe. These are specific objections to a fact contained within the PSR, which as this court has ruled several times, most recently in United States v. Notaro, triggers the requirements of Rule 32. And Rule 32 requires explicit findings on the record. At the sentencing hearing, it was clear that the defense counsel made the argument that there was no competent evidence of gang membership. Was there a specific objection made at that hearing to the police reports from which this evidence came? Yes. On ER 58, defense counsel specifically objected to the competency of the police reports, stating that these offhand notations were insufficient, that the government could have supported these offhand notations with further information like a gang book, a CID briefing, a variety of other sources from which the government could have carried its burden of proving that Mr. Malone was an alleged gang member or not. That wasn't done in this case, and we requested an evidentiary hearing to resolve that matter for that reason. I'm looking at the objection, and it certainly encompasses the argument, but does it really object to the consideration? It's described as, quote, the offhand notation by the probation report that it was alleged in the police report, end quote, so on and so forth. So it's saying it's not particularly persuasive evidence, but does it say it's not evidence at all? It's saying that it's not competent evidence. Well, that might have been the intent of it. That's actually not what it says, is there's no competent evidence other than this evidence. That suggests to me, okay, that's competent evidence. There's nothing more than that that counts. So I don't hear that as an objection to the competency of the evidence cited by the pre-sentencing report. I think counsel intended to be objecting to the competency of that evidence based on his description of the kinds of evidence that police officers usually use to support such offhand notations in their police report. And if you turn to the defense counsel's sentencing memorandum, their reply, I think it's ER42 and ER43, counsel states, here there are no facts or any evidence to support the allegation that Mr. Malone is a gang member at the bottom of the first paragraph. Which page was that? ER42. Well, the argument there's no evidence isn't usually taken to be an evidentiary objection. It's just a persuasive saying, a way to say that there's nothing that proves the point. So, but I hear your argument. Right. To the extent that this could be characterized as an objection to an actual fact contained within the PSR, that's where the argument is leading. And specifically, the fact is whether or not he is a gang member. Mr. Malone never admitted to being a gang member. He only admitted to having a very troubled youth where he was abused by a drug-addicted mother growing up in a very poor part of south L.A., and he used those memories and those skills and the drug abuse that that led him to in his future job. Well, he was, okay, he was involved in drugs. He lived in a very poor part of the city. So does he have to be a gang member in order to have this restriction? I believe he has to be a gang member in order to have this restriction. The probation officer stated that it was only imposing this restriction because of its belief that Mr. Malone was a gang member. So in order to impose a restriction and his ability to associate with gang members, one that significantly imposes on his ability to pursue his occupation. Well, as to the latter point, is that really the case any longer, given the acknowledgement, the affirmative acknowledgement by the government that it doesn't take the position that his continued employment or, after he serves his time, his renewed employment would violate the condition? This Court has ruled in United States v. Wolfchild that a probation officer's discretion doesn't mitigate a district court obligation. Discretion. This is an affirmative statement that this condition doesn't reach that employment. There's no decision to be made by the probation officer later. The government's on the record saying it doesn't. I don't think there's any support in the law that a probation officer's decision beforehand about what counts as incidental contacts, that wouldn't fall under this. This isn't the probation officer. They don't submit briefs to us. This is the United States government speaking through the U.S. Attorney's Office as to their understanding of the meaning of the condition. I think there's zero prospect, particularly if it's recited from the disposition of this Court, that the government would seek to change that position. If you accept that as a proposition, is there really an occupational limitation here? Your Honor, I don't accept that as a proposition simply because the government describes this in that same section as a non-associational restriction. It is clearly an associational restriction. It's a restriction on his right to associate with members of the rolling 40s gang. You've got somebody with a troubled youth living in a bad neighborhood trying to pursue an occupation that puts him in contact with gang members. What's the ill logic of saying outside your occupation you shouldn't be associating with gang members? He's going to be surrounded by temptation and he has his admittedly troubled youth to deal with. I guess I'm puzzled by this because I find it difficult to see what remanding to the district court would accomplish. There is absolutely no doubt in my mind as to what the district court was trying to accomplish. Is there any doubt in your mind what would happen if it went back? It would preclude Mr. Malone from coming across the problem of different probation officers trying to determine what constitutes incidental contacts in the context of disposition. Disposition puts him in a variety of situations with these gang youth. I think clarity from the district court would be necessary in order to prevent him from being randomly violated. The representations of the government now don't undermine the need for the district court to justify imposing a condition that could potentially create that situation for Mr. Malone. Do you have any support for your argument that a judge cannot impose a restriction on association with gang members if it's not proven that the person, the defendant, was a member of a gang? Most of the case law citing to gang conditions like United States versus Napolo and United States versus Saltero, I think it's United States versus Saltero, when they consider whether or not a gang condition is adequately justified, the record concerning a defendant's actual relationship with the gang is never contested. That is part of the evidentiary basis the court used to justify imposing such a condition. But say a judge was concerned about a person who had been convicted of selling drugs and the person was living in a neighborhood with gangs. Why couldn't the judge impose a restriction on association with any gang members just as a way of helping the person through a supervised release period? Why wouldn't that be logical and reasonable? Because it's a very sharp imposition on his liberty interests. And in this case, given that he is a gang intervention counselor, it was significantly opposed upon him. And so I think a court would have to find explicitly, and to the Rule 32 violation, resolve the factual dispute contained within the PSR that Mr. Malone was a gang member before it could justify imposing such a condition. And with that, Your Honors, I will reserve the rest of my time for rebuttal. You may. Good morning, Your Honors, and may it please the Court. Ashley Aul for the United States. I apologize in advance. I have a cough, so I apologize in advance for any eruptions. It used to happen to me with regularity right before oral argument. I can sympathize. To address Judge Tenenheim's question first, there actually is case law standing for the proposition that someone need not be a verified member of a gang to support an associational restriction. The case that I have offhand is the Ross case. The Penn site is 476F3rd at 721. In that case, I believe it was a very young defendant who, though he admitted to having passed out white supremacist paperwork, denied that he was actually a member of a white supremacist group. And the Ninth Circuit in that case upheld a more or less identical, frankly, broader associational prohibition on the ground that he had been so associated. And the Court said that special conditions that may seem to prevent reversion into a former crime-inducing lifestyle by barring contract with old haunts and associates, even though the activities may be legal, were justified in that case. Going backwards to the Rule 32 arguments, I think it's important to keep in mind that plain error applies in this case. To the extent there is even some philosophical doubt as to whether this was a legal or factual challenge, and I submit that there is not. I submit that this was not a specific factual challenge under this Court's precedence. Under plain error, it certainly wasn't clear or obvious that it was a factual challenge. Well, he argued in so many words that there's no proof of gang membership. How is that not a factual challenge? I think in the same way that it wasn't a factual challenge in Stodoro, Your Honor, where the argument was that particular proof was hearsay, I realize in that case it was a little bit more precisely stated as an evidentiary challenge. But even if here the argument were that there was no competent evidence, that's not per se a factual dispute of the circuit. Well, as I just went through with your colleague, in fact, what the lawyer said, it was then Mr. Sutton, there's no competent evidence other than. Right. And so I'm not sure that any evidentiary objection, any proper evidentiary objection was made. It sounded to me like the argument was principally a factual argument, that is, that there's not enough proof. The premise of the argument is a legal argument you've already spoken to, whether gang membership is required. But the thrust of the argument is the factual argument that there's just not enough proof that he was a gang member, not enough proof to justify the imposition of the condition. Why isn't that to be taken by the Court as a factual challenge? I think in the same way that in a way Rule 29 challenges are actually sort of legal challenges. As a matter of law, the government didn't meet its burden. And I think defense counsel in the trial court was very careful here in how he articulated this challenge. And it was articulated more or less the same in both the papers and before the district court. It was that the government didn't meet its burden, and we don't have the affirmative obligation to put on any evidence of lack of gang membership. So that's to say, in fact, he disclaimed putting on evidence of lack of gang membership, though later proffered the lack of tax relief. What did the pre-sentence report say about gang membership?  I think the language of both of these is interesting as well. The recommendation letter at SER 5 said that it recommended conditions 8 and 9, quote, as a result of the defendant being identified as a member of the Roland Forties Crips. That's SER 5. And then the PSR simply indicated that investigative materials indicate the defendant is a member of the Roland Clerks. And there was no dispute that investigative materials indicated that he was a member of the Roland Forties Crips. In any case, I think because this isn't even plainly a legal, pardon me, a factual challenge, it's not clearly clear or obvious that the district court failed to rule on it. It's also not clear that the district court said, this is ER, bottom of ER 59, I'm mindful of your respective positions on the gang issue, including the offer of proof with respect to the tattoos. There was evidence presented of the defendant having been involved in, not involved in, but having, blah, blah, blah, blah. And the Court's comment a little lower on ER 60, I'm aware of the evidence on this, but I think it does distill to the terms and conditions on supervised release. And I'll evaluate it at that time. Right. And I think that's why. Did he? I think he did, Your Honor. I think what I was going to say. The second point is that under Rigby and other cases that say that it's sufficient under Rule 32 for a district court to adopt the position of one of the parties, that it also can't be plain error because the Court did that. The Court ultimately adopted the position of the PSR, which was to impose this condition slightly more. Your premise here is it's still plain error. And given that the Court itself makes reference to being aware of the evidence on the issue, it's hard for me to understand a position that says he didn't understand that there was a challenge to the evidence, that there was a factual challenge. In fact, I think he viewed it principally as a factual challenge. He didn't view it as a question of whether the evidence cited in the PSR was competent. And so, and frankly, I have no doubt as to what, when he goes through the litany at the end, I suspect the need to say I think there's sufficient indication of contact with gangs wasn't on his checklist. So I don't have any real doubt as to what he was thinking. But I also don't think he actually said that. Did he? Is there any place where he recited a conclusion with regard to the factual challenge to gang involvement? Well, he did adopt the position of the PSR, which, as I just said, under Rigby and other cases is sufficient. And, Your Honor, there is, the Court did make a reference, I think he said there was intimation of gang involvement. And I don't have the ER site right in front of me, but the Court said there was intimation of gang involvement, albeit disputed with what he said, and then went on to make his ruling. I think that's the closest he came to explicitly making reference. You're right. Why isn't this an occupational restriction? Your Honor, I think it's not an occupational restriction for three reasons. First is, as we put forth in the brief, no one considers it an occupational restriction, not the probation office, not the government. A defendant does. Well, right. Contrary to what defense counsel was saying, you don't have to take our word for  The Supreme Court case in Arsenaga and this Court's decision in Soltero both hold that, I think, the restrictions that are not meaningfully distinguishable can't be applied in the context in which defendant is alleging they could be implied. We didn't go into this detail in the brief. I also think, as a matter of law, under this Court's more recent precedents, such as Rearden, which is a case that deals with what is or is not an occupational restriction, I also think it's not an occupational restriction under Rearden. In Rearden, a defendant had similarly been sentenced to a supervised release condition that on its face didn't explicitly relate to his job. It didn't say you must report X, Y, Z to your employer or you cannot work. Yes, Your Honor. Yeah. Well, I understand that, but it's not a typical occupational restriction in that sense. But it's the – as I understand the argument that is made, it's very – it puts the defendant in a – the appellant in a difficult position as to how he conducts himself in his job, because he's supposed to be counseling people with respect to games. And some of those people are going to be members. And if he meets one of them outside of his workplace, is he associating? I mean, this is – this could be a never-ending battle for him. So can you give some guidance as to what he's supposed to do here in this job? Your Honor, I don't – I think in terms of interactions that are related to his work or interactions that in general are, you know, incidental, including outside of work, those have been held not to violate these associational restrictions. And I think the reasoning of the Arsenaga case, the Supreme Court case, is actually very helpful. It has to do – it's not up to you who you run into in your work necessarily. It's part of your job. It would impose all sorts of, I think, very difficult and, as you say, impossible to navigate conditions on someone's life if that were something that were considered associational. But I think actually the Reardon case, which I apologize is not in the brief, but it's at 349 F3rd 608. In that case where there was a challenge to a prohibition that someone not go on the Internet, which I think is even more plainly sort of harmful in terms of job, the Court ultimately found that there was no plain occupational restriction and said – and rejected the defendant's assertion that, quote, any condition that restricts him from access to equipment, he needs to engage in his profession amounts to an occupational restriction absent a showing that the conditions would actually have that effect. And in that case, as in this case, the defendant has not put forward that he would actually run into a Roland Forty Crips member. It's fairly hypothetical at this point. And I think it's – I think it's plainly established by both the case law and the government's assertions here that this isn't an occupational restriction. Ms. Ayl, I have a question. The principle is quite clear that conditions that affect freedom of association have to be at least narrowly tailored. You know, no greater deprivation than necessary, reasonably necessary to achieve whatever the goal the judge has in mind. Why wouldn't it be reasonable for the Court to be required to make specific findings about the appropriateness of conditions like 8 and 9, which involve the freedom of association, before imposing those conditions, especially if it's objected to in some respect by defense counsel? I think two things, Your Honor. I think under the Ross case, which is cited in the briefs at 476 F. 3rd, 721, this is not the kind of associational restriction. This is not the kind of restriction on a serious liberty interest that requires particularized findings. And second – Restriction on gang association? Exactly. Ross is the case with the neo-Nazi groups. And in that case, it was analyzed under the standard analysis for supervised release special conditions. And second, there was a substantive objection to this. And so the substantive reasonableness analysis, we don't look to plain error for. But there was no procedural objection at the time. And so plain error does apply. And on those two grounds, Your Honors, unless there are further questions, I would submit. Thank you. Very quickly, Your Honors. The case the government relies upon, United States v. Ross, there was no question as to whether or not the evidence was sufficient in that case to justify the imposition of that associational restriction. Furthermore, there are other ways to fashion this supervised release condition to meet the goals of the district court. Like, for instance, the condition imposed in United States v. Romero where the defendant was restricted from associating with people who dealt drugs or had past history or past crimes relating to drugs. Restricting his association with a specific gang member, given the nature of his occupation, was a significant liberty interest. And the district court was required to make explicit findings by Rule 32 and by the fact that this was a significant liberty interest before imposing such a condition. Your argument about Rule 32, does your argument apply only to associational restrictions or would it apply to any condition of supervised release if there was an objection made to it? Rule 32, actually, my Rule 32 argument I separate from the imposition of condition number 8. Rule 32 is with respect to the fact that there was a factual objection made to a fact contained within the PSR that was relevant to both his supervised release. And I would argue the district court and the government argued that it was relevant to his sentence as well. At least the district court considered it while considering his sentence. But this was a basic factual dispute. And the mandate of Rule 32 is very clear that when a defendant raises a specific factual dispute with a fact contained within the PSR, his alleged gang membership, Mr. Malone wholesale denied that he was indeed a member of any gang. The district court is required to explicitly resolve that fact. But was the government correct when it read the pre-sentence report to say that there are indications of gang membership? Yes. The PSR stated based on these offhand notations and these police reports that it believed Mr. Malone was a gang member. So I just want to make clear, your position, your argument on Rule 32 is that any factual objection to the PSR that affects any condition of supervised release, if there is an objection, the judge must make Rule 32 findings regardless of whether it affects associational rights or not. Right. The associational rights is a separate issue. It is an issue as to whether or not the district court adequately justified the imposition of Condition 8. But the Rule 32 violation stands on its own. When there is a factual dispute with the PSR that affects a defendant's sentence and supervised release, as this Court has ruled several times, is part of a defendant's sentence, that factual dispute must be explicitly resolved on the record. And that was not done in this case. Well, but the – we had authority, the government cited the Rigby case where both sides are absolutely clear as to what the position is. And the court goes on and said, I'm now going to give the defendant this upward adjustment or whatever it is, that that's good enough. The Rigby case – in the Rigby case, there was actually no factual dispute raised with the specific fact contained within the PSR. In Rigby, they were actually disputing a conclusion or a guideline application or a specific condition or an enhancement. They never actually stated on the record, I dispute this fact in the PSR. I'm disputing this recommendation. And so by imposing the recommendation, yes, the district court in that case resolved that dispute. Here, there was a factual dispute with the allegation that he is a gang member and the evidence that supported that allegation. The district court needed to resolve that in order to comply with Rule 32. But it's clear that this factual dispute in this case did not have any impact on the length of the sentence. Great. I don't think that's clear, Your Honor. The district court – How would it have had an impact on the length of the sentence? I think the government argued that his alleged gang membership had relevance to his criminal history and that that should be considered in determining his sentence. The district court, when it was on ER 79 to 80, was considering what kinds of sentence to impose on Mr. Malone. It actually considered its gang membership. That was actually the only statement it made in reference to its gang membership while it was imposing sentence. So I don't think you can cleanly delineate his gang membership as only relevant to the conditions of supervised release. I think any intimation that he was involved with a gang would have had an impact on his sentence. And either way, it's not clear from what the district court said in this record whether or not it was actually relevant to only supervised release or if it had an impact on his entire sentence. But the judge did not explicitly say that the sentence is longer because of his past gang membership, correct? No. We thank you. We thank both counsel for your very helpful arguments. The case just argued is submitted.
judges: Tunheim, Schroeder, Clifton